UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JESSICA A. SLOAN,                      )
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )          Case No. 4:16 CV 86 (JMB)
                                       )
DEPUTY GREG LONG,                      )
                                       )
            Defendant.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to exclude the testimony of plaintiff's expert witness, Michael D. Lyman, Ph.D. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed.

In this 42 U.S.C. § 1983 action, plaintiff Jessica Sloan brings a claim that defendant Deputy Greg Long used unconstitutionally excessive force by deploying his Taser against her in the course of her arrest. Plaintiff voluntarily dismissed her claims for denial of medical care, municipal liability and violation of state law, and all claims against Phelps County and Sheriff Richard Lisenbe. [Docs. # 31 & # 41]. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.     Facts**[1]

    **A.     The Arrest**

On January 23, 2011, Deputy Carl Kossuth responded to a burglary report. He observed footprints leading from the complainant's home to the trailer shared by plaintiff and Gary

_____

[1] For the purposes of this Memorandum and Order, the facts are based on allegations in the complaint and statements in Dr. Lyman's report and deposition.

Gallamore. Deputy Kossuth entered the trailer and spoke with Gallamore, who confirmed that he and plaintiff had taken several items from their neighbor. Deputy Christian Butler and defendant Long arrived at the trailer to provide assistance and Deputy Kossuth went to the neighbor's home, leaving Butler and Long to complete the arrests of plaintiff and Gallamore. See Lyman Expert Report (citing official reports from Kossuth and defendant Long) [Doc. # 43-2 at 4].

The circumstances leading up to defendant Long's use of the Taser are disputed. In the complaint, plaintiff alleges that Deputy Kossuth placed her left wrist in handcuffs but did not cuff her right wrist. She claims that, after Kossuth left, she was sitting on the floor gathering together some stolen DVDs. She attempted to rise to her feet, with the assistance of Deputy Butler. At that moment, defendant Long entered the room and deployed his Taser without warning. Plaintiff alleges that she had a seizure and lost consciousness when she was Tased. She also alleges that while she was unconscious, defendant Long handcuffed her, lifted her upright, and transported her to a waiting ambulance, causing her to sustain a broken collarbone and injuries to her head, left foot, and left ankle. Complaint at ¶¶ 23, 26-29, 34-36 [Doc. # 1].

By contrast, defendant Long reported that plaintiff became verbally aggressive with Deputy Butler. Butler told her to stand up and place her hands behind her back, which she did. According to defendant Long, as soon as Deputy Butler placed one cuff on her, plaintiff pulled away, made a closed fist, and raised it as though she were going to strike Butler. Defendant Long, believing that Deputy Butler had not seen plaintiff's movement, deployed his Taser to prevent her from hitting Butler. Expert Report at 5. Defendant Long reported that plaintiff was verbal after she was Tased, and complied with his instruction to place her hands behind her back and walked to the patrol car with his assistance. Id. He called for an ambulance to transport her

to the Phelps County Regional Medical Center to remove the Taser probes. Id. Plaintiff was declared fit for confinement after the probes were removed and she was transported to the Phelps County Jail. During her confinement, plaintiff complained of shoulder pain and, on January 26, 2011, it was determined that she had a broken clavicle. Complaint at ¶¶ 46, 57, 59.

Plaintiff pleaded guilty to second-degree burglary. She was not charged with resisting arrest or assaulting a police officer. Id. at ¶¶ 62-64. The Phelps County prosecutor noted, "She got tased . . . She was punished for being noncompliant. Had she actually struck Chris [Butler], I would've put her in prison." Expert Report at 11 (quoting Notice of Case Disposition).

## B.  Plaintiff's Expert

Plaintiff retained Dr. Lyman as an expert in law enforcement policy and practices. See Expert Disclosure [Doc. # 43-1]. His report and deposition have been provided to the Court. Expert Report [Doc. # 43-2]; Deposition [Doc. # 43-3]. Dr. Lyman has been a college professor teaching and researching in the area of policing for over 30 years, and has authored numerous articles and books dealing with different aspects of police operations. Prior to becoming an educator, he was a certified generalist police instructor for three years and a criminal investigator for eleven years. Expert Report at 2. He was certified by Taser International to be an instructor on using the Taser. Dep. at 27. Defendant does not contest Dr. Lyman's qualifications to testify as an expert in police practices.

Dr. Lyman evaluated defendant Long's conduct under the "objectively reasonable" standard set forth in Graham v. Connor, 490 U.S. 396 (1989), and professional policing guidelines established by the International Association of Chiefs of Police (IACP). Report at 7-8. Based on his review of the police reports, Dr. Lyman opined that that there was evidence that plaintiff was compliant, that other viable force options were available to defendant Long, that

"empty-handed control techniques" would have been effective, and that defendant should have given plaintiff a verbal warning before using the Taser. Report at 10-12. Dr. Lyman further opined that defendant Long's use of the Taser against plaintiff was "unnecessary, punitive and served no objectively reasonable purpose," and that the prosecutor's note is evidence that defendant Long had subjective, punitive motives for deploying his Taser. Id. at 11-12. In addition, Dr. Lyman stated that the deputies departed from nationally recognized standards for controlling suspects, including handcuffing techniques. Id. at 10. Dr. Lyman's deposition testimony was consistent with his written report.

## II.     Legal Standard

Federal Rule of Evidence 702 permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue. Lee v. Andersen, 616 F.3d 803, 808 (8th Cir. 2010). Under Rule 702, the district courts act as "gatekeepers," admitting expert testimony only if it is both relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) (scientific expert testimony); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (extending Daubert to all expert testimony). "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." Lee, 616 F.3d at 808 (quoting McKnight By & Through Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1408 (8th Cir. 1994)). The district court's "gatekeeper role should not . . . invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011) (citation omitted). As long as an expert's testimony "rests

upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014) (quoting Daubert, 509 U.S. at 590, 596).

Certain categories of expert testimony are not admissible. For example, it is the judge's job to instruct the jury on the applicable law and, thus, expert testimony on matters of law is not admissible. S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003). Similarly, legal conclusions are for the court to make and are not proper subject for expert testimony. Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (it was abuse of discretion to allow police-practices expert to testify that officers' conduct comported with Fourth Amendment). By contrast, expert testimony on industry practice or standards is admissible. S. Pine Helicopters, 320 F.3d at 841.

## III.    Discussion

Defendant moves to exclude Dr. Lyman's testimony because he expresses a legal conclusion; he makes credibility determinations and speculates about facts; and his opinion regarding the handcuffing of plaintiff is not relevant.

### A.    Unreasonable Conduct and Police Practices

Dr. Lyman opined that defendant's use of the Taser was "unnecessary," "unreasonable," or "punitive," and served no "objectively reasonable purpose." Whether the force used in the course of making an arrest was constitutionally excessive is an issue of law. Brossart v. Janke, 859 F.3d 616, 624 (8th Cir. 2017) (citation omitted); McKenney v. Harrison, 635 F.3d 354, 359 (8th Cir. 2011) ("Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law.") (citation omitted). Thus, an expert's

opinion concerning the "reasonableness" or "excessiveness" of an officer's conduct under the Fourth Amendment is an impermissible legal conclusion, not a fact-based opinion. Shannon v. Koehler, No. C 08-4059-MWB, 2011 WL 10483363, at *30 (N.D. Iowa Sept. 16, 2011); see also Pacheco v. Johnson, No. 3:11-CV-00221, 2017 WL 3149580, at *2 (M.D. Tenn. July 25, 2017) (barring Dr. Lyman from opining "as to any ultimate conclusions regarding whether the defendant [police officer] acted reasonably at any point in time during his encounter with the plaintiff."); Elex v. Glirbas, No. CIV. 12-3206 ADM/JJK, 2014 WL 2462811, at *8 (D. Minn. May 29, 2014) ("expert's opinion on the reasonableness of police conduct in light of Fourth Amendment standards is an impermissible legal conclusion and is not admissible."); Scherrer v. City of Bella Villa, No. 4:07-CV-306 (CEJ), 2009 WL 690186, at *3 (E.D. Mo. Mar. 10, 2009) (expert's opinion that use of Taser was unnecessary and inappropriate was inadmissible legal conclusion). Dr. Lyman is not permitted to testify that defendant's conduct was unnecessary, unreasonable or punitive.

Nonetheless, "a police procedure expert's testimony may be proper on issues other than the 'reasonableness' of an officer's conduct under Fourth Amendment standards." Shannon, 2011 WL 10483363, at *30. The role of such an expert "is to contextualize the evidence the jury will hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers throughout the country." Pacheco, 2017 WL 3149580, at *2. Thus, courts have allowed qualified experts to testify regarding police practices and standards. See id. at *3 (permitting Dr. Lyman to testify about "the general standards" of use of force); Sanders v. Studdard, No. 12-01069-CV-W-GAF, 2014 WL 3487145, at *9 (W.D. Mo. Feb. 12, 2014) ("Dr. Lyman will be permitted to testify regarding nationally accepted police practices regarding use of force."); Peters v. Woodbury Cty., Iowa, 979 F. Supp. 2d 901, 925 (N.D. Iowa 2013), aff'd

<u>Peters v. Risdal</u>, 786 F.3d 1095 (8th Cir. 2015) (expert would be allowed to testify whether restraint was applied properly and was appropriate in the circumstances presented under recognized standards and practices for jail administration); <u>Alvarado v. Oakland Cty.</u>, 809 F. Supp. 2d 680, 690 (E.D. Mich. 2011) (permitting Dr. Lyman to testify regarding nationally accepted police practices governing the use of force).

Plaintiff argues that Dr. Lyman may also opine whether defendant's conducted departed from normal policing standards. Plaintiff cites Rule 704(a), which provides that opinion evidence "is not objectionable just because it embraces an ultimate issue." Under Rule 704, "the question, 'Did T have capacity to make a will?' would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." Advisory Committee Notes. Rule 704 "permits testimony embracing an ultimate issue but requires exclusion of any testimony providing a legal conclusion." <u>K.W.P. v. Kansas City Pub. Sch.</u>, No. 16-0974-CV-W-SRB, 2017 WL 5505400, at *3 (W.D. Mo. Oct. 31, 2017). Under Rule 704, expert opinions "can embrace the ultimate issue of *fact*, . . . including whether standards or practices are applicable to a given situation and whether those standards or practices were met in the situation. However, an expert cannot testify that 'following or failing to follow certain standards met or failed to meet the applicable *legal* standard,' such as the 'reasonableness' of [the defendant officer's] actions." <u>Id.</u> (emphasis in original) (quoting <u>Peters v. Woodbury Cty., Iowa</u>, 979 F. Supp. 2d 901, 922 (N.D. Iowa 2013)). Thus, courts have allowed experts on police practices to testify in response to hypotheticals, such as 'Assuming this set of facts, might a reasonable officer conclude or do *X*?'" <u>May v. San Mateo Cty.</u>, No. 16-CV-00252-LB, 2017 WL 2305160, at *9 (N.D. Cal. May 26, 2017); <u>see also</u> <u>Estate of W. Scott</u>

Creach v. Spokane Cty., No. CV-11-432-RMP, 2013 WL 12177097, at *2 (E.D. Wash. May 1, 2013) (expert "may provide his opinion in response to a hypothetical of whether [officer's] actions comported with established police practices and procedures, but he may not provide a legal conclusion that [officer's] actions were objectively reasonable under the circumstances."). As recently stated by another district court, "Dr. Lyman may testify about national standards, and he may offer opinions as to how these standards should manifest in hypothetical situations, including hypothetical situations that mirror the varying versions of the events giving rise to this action. He may not, however, opine as to the correct version of events in this matter or opine as to any ultimate conclusions regarding whether the defendant acted reasonably at any point in time during his encounter with the plaintiff." Pacheco, 2017 WL 3149580, at *2.

Defendant objects to Dr. Lyman offering any testimony regarding the Fourth Amendment's "objectively reasonable" standard, as set forth in Graham v. Connor. Plaintiff does not dispute that Dr. Lyman may not testify regarding the appropriate legal standard. Dr. Lyman noted, however, that "most basic police training includes instruction in case law and certain constitutional principle and how they relate to accepted police procedure." Report at 7. Thus, the Court will not bar Dr. Lyman from testifying that nationally accepted police procedures, such as those promulgated by the IACP, embrace the "objectively reasonable" standard. In addition, he can testify generally about Taser International's training guidelines regarding the proper use of a Taser. Because the Court will instruct the jury on the legal standards governing excessive force claims, Dr. Lyman may not testify that deviation from the IACP standards and Taser guidelines establishes that plaintiff's constitutional rights were violated. See Alvarado, 809 F. Supp. 2d at 691 (whether defendant's conduct "was unreasonable given those guidelines is a decision that only the jury is competent to make.") For reasons

discussed below, Dr. Lyman may not testify that defendant Long's use of the Taser was unnecessary, unreasonable, or punitive. He also may not testify that defendant Long should have given a verbal warning or used an alternate method to contain plaintiff.

### B. Credibility Determinations and Factual Conclusions

Based on his review of the evidence, Dr. Lyman concluded that plaintiff was compliant with Deputies Kossuth and Butler and that it was unlikely that plaintiff was in the process of attempting to strike Deputy Butler. Report at 11. Thus, he contends, defendant Long's assertion that plaintiff was attempting to strike Deputy Butler is questionable. In addition, Dr. Lyman noted that the training offered by Taser International "clearly states that officers should announce their intended use of a Taser when practical," and that, under the "known circumstances" of this case, defendant had sufficient time to issue a verbal warning. Report at 11. Finally, Dr. Lyman testified that the prosecutor's note is evidence that defendant had a subjective intention to punish plaintiff when he Tased her. Dep. at 101-02.

It is settled law that "an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." Williams v. Illinois, 567 U.S. 50, 57 (2012). "However, '[t]here is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not.'" Thomas v. Barze, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014) (quoting Richman v. Sheahan, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006)). Dr. Lyman's conclusion that plaintiff was compliant and unlikely to be attempting to strike Deputy Butler improperly assesses the credibility of the witnesses and invades the

province of the jury. Similarly, his opinion that defendant had enough time to issue a warning before using his Taser assumes facts that must be found by the jury. Finally, the jury is capable of drawing its own conclusions regarding the meaning of the prosecutor's note and Dr. Lyman may not offer his own interpretation of it.

### C.  <u>Handcuffing Practices and Procedures</u>

Plaintiff alleges that Deputy Kossuth placed her in one cuff, leaving the other cuff free. Defendant reported that Deputy Butler was in the process of placing plaintiff in handcuffs when he saw her ball her fist to strike Butler. Under both scenarios, there was no attempt to completely cuff plaintiff before Deputy Kossuth left her residence. Dr. Lyman opines that this was a departure from nationally recognized handcuffing standards and suspect control and, further, that if plaintiff had been handcuffed while all three officers were present, it is unlikely that defendant Long would have used his Taser and she would not have broken her collarbone. Report at 10. Defendant argues that any evidence regarding whether she was properly handcuffed is irrelevant to plaintiff's use of force claim. Plaintiff counters that Dr. Lyman's testimony will help the jury evaluate how the process of securing plaintiff impacted the factors defendant Long needed to consider prior to deploying his Taser. Dr. Lyman will be permitted to testify generally on the proper methods for securing a suspect. He will not be allowed to testify that plaintiff would not have been Tased if she were handcuffed before Officer Kossuth left the residence.

* * * * *

In conclusion, Dr. Lyman is qualified to offer testimony regarding national standards for police conduct, the use-of-force continuum, and deployment of a Taser. He may not offer opinions regarding the credibility of the witnesses or which version of events is more probable.

He may not opine as to any ultimate conclusions regarding whether defendant Long acted reasonably. Because impermissible opinion evidence is inextricably linked with topics upon which he may opine, Dr. Lyman's report may not be admitted at trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to exclude testimony of plaintiff's expert [Doc. # 42] is **granted in part and denied in part**. Dr. Lyman will be permitted to testify at trial in a manner consistent with this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of March, 2018.